IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 13, 2005

## PATRICK THURMOND v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 95-B-1027     Seth Norman, Judge**

—————————————

**No. M2005-00214-CCA-R3-PC - Filed March 15, 2006**

—————————————

The petitioner, Patrick Thurmond, appeals from the Davidson County Criminal Court's dismissal of his petition for post-conviction relief from his convictions for two counts of aggravated rape, one count of attempted aggravated rape, one count of aggravated sexual battery, and one count of aggravated burglary and effective sentence of fifty years.  He contends he received the ineffective assistance of counsel because his attorney failed to remove prospective jurors from the jury panel, failed to exclude physical evidence, failed to object to hearsay testimony, failed to call an alibi witness, and advised the petitioner not to testify.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

William Maurice Speek, Chattanooga, Tennessee, for the appellant, Patrick Thurmond.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case arises from the petitioner's conviction for raping the victim at the hotel where she worked.  A Davidson County grand jury indicted the defendant for two counts of aggravated rape, one count of attempted aggravated rape, one count of aggravated sexual battery, and one count of aggravated burglary, and a Davidson County Criminal Court jury convicted him as charged.  The petitioner appealed, and this court affirmed his conviction.  See State v. Patrick Thurmond, No. 01C01-9802-CR-00076, Davidson County, slip op. (Tenn. Crim. App. Oct. 5, 1999), app. denied (Tenn. Apr. 10, 2000).

The facts of this case, as found by this court on direct appeal, are as follows:

On September 8, 1994, [the victim] worked as a housekeeper for the Drury Inn. At about 9:00 a.m., while cleaning the bathroom of a fourth-floor room, she heard a noise from the sleeping area. She found a man standing in the room's sleeping area. He wore a black shirt, long black shorts, black gloves, and held a pistol. The man tried to speak to [the victim], but she [did] not understand any English.

When [the victim] tried to escape, [the petitioner] grabbed her by the shirt and put the gun to her head. Then, he threw her on the bed and put a pillowcase over her head. He raped her by performing cunnilingus and penetrating her vaginally with his penis. When he tried to put his penis in her mouth, she pushed him away. He also kissed her on her breasts. Trial testimony established that the attack lasted between one and 1 1/2 hours. [The victim] later identified [the petitioner] as her attacker.

The assault ceased when fellow Drury Inn staff members, Leah Adams and Lourdes Rivera, banged on the door and called out to [the victim]. [The petitioner] motioned for [the victim] to re-dress while he did the same. While Adams and Rivera tried to open the hotel room door, [the petitioner] opened the door and pushed his way between the women.

Rivera chased [the petitioner] down the steps and around the building to a restaurant parking lot behind the hotel. When she accused him of raping [the victim], [the petitioner] replied, "she gave it to me." Rivera watched [the petitioner] get into a gray Chevrolet Corsica and memorized the license plate number as [the petitioner] drove away. Rivera related the number "099 JKB" to a hotel manager who, in turn, related it to police. When asked by Detective Danny Baxter for the number from memory, Rivera related the number "099 JKF." Baxter found that "099 JKF" was registered to the wrong type of car, but confirmed that "099 JKB" was the plate number of a Corsica registered in [the petitioner's] name.

Earlier that morning, Lynn King, a housekeeper at nearby Days Inn saw a man, wearing all black clothing, roaming the halls of that hotel. She and other housekeepers had seen the same man, in the same clothing, lingering around the hotel a couple of weeks earlier. King identified [the petitioner] as the man she saw.

Detective Baxter interviewed the victim and several witnesses. Based upon the physical descriptions and the owner

registration information derived from the license number given by Rivera, Baxter put together a photo lineup which included the [petitioner]. [The victim], Lourdes Rivera, and Lynn King identified [the petitioner] as the perpetrator from that lineup.

Baxter secured a search warrant for [the petitioner's] residence where he collected items of clothing thought to be associated with the rape of [the victim]. Analysis of that clothing by the Tennessee Bureau of Investigation (TBI) crime laboratory revealed fiber on the victim's clothing that was consistent with a fiber on the [petitioner's] clothing.

(Footnote deleted).

At the post-conviction hearing, Delores Grayson testified that she hired the petitioner to be a security guard for the video store where she was a manager. She said the day of the crime, September 8, 1994, was the petitioner's birthday. She said that on that day, she called the petitioner before 9:00 a.m. and asked if he could open the store because she had to run an errand. She said the store normally opened at 9:00 a.m. She said the petitioner was at home when she talked to him. She said she went to Hickory Hollow Mall to buy the petitioner a birthday present. She said that on her way to the store, she stopped to get her car washed and that the car's battery died at the carwash. She said she called the petitioner at the video store around 9:30 a.m. and asked him to come to the carwash to jumpstart her car. She said the store was one-half mile from the carwash, and the petitioner arrived in less than five minutes. She said that they returned to the video store and that the petitioner remained at the store until 2:00 or 3:00 p.m.

Ms. Grayson testified that she talked to the petitioner's trial attorney and told him where the petitioner was the morning of September 8, 1994. She said that she was willing to testify and that the attorney knew how to contact her. She said the petitioner's attorney told her if she testified the state may ask her about her brother's criminal history. She said she went to the petitioner's trial but the petitioner's attorney told her he would not need her testimony. She said that the petitioner was a friend of the family and that she had been romantically involved with the petitioner one time. She said that in 1994, the petitioner was only a friend.

On cross-examination, Ms. Grayson stated that her video store was located at 107 Lafayette in south Nashville. She acknowledged the petitioner worked at Perry's Market when she first met him but denied he was working there on September 8, 1994. She acknowledged that the police searched the petitioner's house and that the police spoke to the landlord who owned the house and had a close relationship with the petitioner. She acknowledged the landlord worked at Perry's Market but denied that the petitioner still worked there as the landlord had told the police. She admitted she did not go to the police on September 9, 1994, when she found out the petitioner was charged with the crime. She said the first time she came forward with the alibi was approximately

six months after the incident when she told the petitioner's attorney. She denied knowing the petitioner had been previously convicted of rape.

The petitioner's counsel testified he had practiced law for thirty-four years and practiced criminal law for much of that time. He said he represented the petitioner at the trial but did not represent him on appeal. He said the victim did not speak English, but he could not recall if one of the witnesses acted as an interpreter or if someone else did during the photograph lineup. He said he did not recall how the victim's clothes were packaged at the hospital or if the victim's panties were lost. He acknowledged that fibers found on the petitioner's shirt were consistent with fibers found on the victim's shirt. He acknowledged he did not file a motion to suppress the fiber evidence taken from the shirt after the panties were lost.

Counsel testified that he spoke to Ms. Grayson about a possible alibi. He said he could not remember specifically what she had told him but what she said was inconsistent with what the petitioner had told him. He said the petitioner wanted Ms. Grayson to be called as an alibi witness. He said he asserted an alibi in the petitioner's discovery response. He said Ms. Grayson was inconsistent about the times and did not provide the alibi the petitioner said she would provide. He said that what Ms. Grayson told him was inconsistent with both the facts of the case and with what the petitioner had told him. He said that he did not believe Ms. Grayson was credible and that he did not believe she was telling the truth. He said he told the petitioner he believed Ms. Grayson's testimony would "do more harm than good" at the trial. He said he did not feel that he could ethically call Ms. Grayson as a witness but said he would not say she was lying.

Counsel testified that a witness, Nancy Guiterrez, identified someone other than the petitioner in the photograph lineup, but he could not remember if she was the witness he tried to contact. He said he talked to the petitioner about whether or not the petitioner wanted to testify. He said they talked about the petitioner's extensive criminal record and the facts of the case. He acknowledged that the petitioner may have had one or two prior rape convictions and that the petitioner's criminal record was one of the factors he considered in recommending that the petitioner not testify. He said he recommended the petitioner not testify but told the petitioner it was the petitioner's decision to make. He said he did not believe the petitioner was credible because the petitioner was inconsistent in his statements and would not do well on cross-examination. He said the decisions not to call Ms. Grayson or the petitioner as witnesses were ultimately made by the petitioner. He acknowledged that in the motion for a new trial, he alleged he was ineffective for failing to call Ms. Grayson as a witness. He acknowledged the defense called no witnesses to explain the petitioner's whereabouts at the time of the crime. He acknowledged he did not file a motion in limine to exclude the petitioner's prior convictions, but he said he would have advised the petitioner not to testify even if the prior convictions were excluded.

On cross-examination, counsel acknowledged that the information provided by the petitioner was not the same as the information provided by Ms. Grayson. He acknowledged the petitioner's alibi placed the petitioner in the same part of town where the crime had occurred and left enough time for him to commit the crime and return to the store. He acknowledged Ms. Grayson's statement

that the petitioner worked with her at the video store was inconsistent with the information the police collected from the petitioner about his employment. He acknowledged that the information about one of the witnesses not being able to identify the petitioner in the photograph lineup was presented to the jury. He acknowledged that four people were able to make "some semblance" of an identification of the petitioner. He acknowledged that one of the witnesses provided the police with the license plate number and a description of the car the perpetrator used and that the petitioner owned a car matching the description with a license plate number one letter off from that reported by the witness.

On re-direct examination, counsel testified that their defense was that the petitioner had not committed the crime and the witnesses had not identified him correctly. He said it was his strategy not to call the witness who was unable to identify the petitioner from the lineup because when she got to court she may have identified him. He said it was his strategy to bring out her inability to identify the petitioner through Detective Baxter.

The petitioner testified that he told his attorney about Ms. Grayson, that he heard her testimony in court, and that her testimony was the same as the information he had provided to his attorney. He said he told his attorney several times before trial that Ms. Grayson could verify where he was and that he wanted her to testify. He said he never had any discussions with his attorney about any conflicts in testimony or about the petitioner's or Ms. Grayson's credibility. He said that he talked to his attorney about testifying and that his attorney felt it was not in his best interest to testify because the state would bring in his prior record. He said the only prior felony conviction he had was for rape. He said that as a result of what his attorney told him, he decided not to testify. He said his attorney never told him that his statements were inconsistent with the facts. He said the state failed to establish the chain of custody of the victim's clothing at the hospital and that the victim's underwear was lost. He said he did not learn about the underwear being lost until the middle of trial and that no DNA testing was done on the semen found on the underwear. He said he could not remember if he asked the attorney to try to suppress the clothing. He said that his attorney failed to object to hearsay testimony by Detective Baxter and that it hurt him at the trial. He said that he felt his attorney was ineffective for failing to call Ms. Guiterrez and that her testimony could have helped him. He said his attorney failed to request a second examination of the rape kit after the first examination was inconclusive. He said he was sentenced to fifty years as a multiple rapist but that his attorney failed to preserve the issue for appeal.

On cross-examination, the petitioner acknowledged that all of the witnesses that identified the petitioner at the trial were cross-examined by his attorney but said that he wished they had been more effectively cross-examined. He acknowledged all of the identification sheets that were filled out by witnesses were read into the record and introduced as exhibits at the trial. He admitted his belief that the photograph identification should not come in was because the person who acted as an interpreter for the victim was also a witness. He admitted working at Perry's Market sometime during 1994. He acknowledged telling the police he was working at Perry's Market on September 8, 1994, but said it was because he did not want his new employer to know what was going on.

The trial court dismissed the petition for post-conviction relief finding that "it does not appear as though the petitioner has carried his burden of proving that counsel was deficient in his representation of the petitioner." The trial court found that the petitioner's alibi was "quite suspect in nature" and that counsel was not ineffective for advising against presenting such a defense. The trial court also found "[c]ounsel was not ineffective for preventing the petitioner from testifying," because it was a tactical decision. The trial court relied on this court's determination in the petitioner's direct appeal that the petitioner was not prejudiced by the counsel's failure to suppress all physical evidence based on a break in the chain of custody. The trial court found the petitioner failed to show he was prejudiced by counsel's failure to make a hearsay objection to Detective Baxter's testimony regarding witnesses' identifications of the petitioner.

The petitioner contends that counsel was ineffective because: 1) he failed to remove prospective jurors from the jury panel when specifically requested by the petitioner, 2) he failed to exclude all physical evidence recovered by the hospital employee, 3) he failed to object to Detective Baker's testimony regarding the victim's identification of the petitioner, 4) he failed to call an alibi witness, and 5) he prevented the petitioner from testifying. The state asserts the petitioner waived any issue regarding counsel's failure to remove a prospective juror because he failed to raise the issue in any of his post-conviction petitions or at the post-conviction hearing. The state asserts that counsel thoroughly cross-examined the state's witness about the physical evidence and that this court determined on direct appeal that the petitioner did not suffer any prejudice. The state asserts the petitioner has failed to show he was prejudiced by counsel's failure to make hearsay objections during Detective Baxter's testimony. The state contends that the evidence showed Ms. Grayson would not have provided the petitioner with a valid alibi and that counsel had professional and ethical reservations about presenting Ms. Grayson's testimony. The state asserts the petitioner made the final decision not to testify and failed to show he was prejudiced by the decision or that his counsel was ineffective for advising him not to testify.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. The Strickland standard

has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690, 104 S. Ct. at 2066. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct at 2068. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697, 104 S. Ct. at 2069.

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See DeCoster, 487 F.2d at 1201.

## I. REMOVAL OF A PROSPECTIVE JUROR

The petitioner contends he received the ineffective assistance of counsel because counsel failed to remove prospective jurors from the jury panel when specifically requested by the petitioner. The petitioner asserts he wanted the jury foreman removed from the panel during voir dire. The petitioner contends that counsel acknowledged in the motion for a new trial that he was ineffective for failing to exhaust all his peremptory challenges. The petitioner asserts a reasonable likelihood exists that if another juror had replaced the jury foreman that the verdict would have been different.

The state contends the petitioner waived this issue for failure to raise the issue in any version of his post-conviction petitions or at the post-conviction hearing. The state asserts the petitioner has failed to present any evidence on this issue and cannot show he was prejudiced or received the ineffective assistance of counsel.

A post-conviction petitioner may not raise grounds on appeal that were not alleged in the petition for post-conviction relief. See Long v. State, 510 S.W.2d 83, 85 (Tenn. Crim. App. 1974).

-7-

Because this issue was not raised in any of the post-conviction petitions, it is not properly before this court on appeal, and we will not review the merits of the allegation.

## II. PHYSICAL EVIDENCE

The petitioner contends that he received the ineffective assistance of counsel because his attorney failed to exclude all physical evidence recovered by the hospital employee. The petitioner asserts Nurse Weingartner collected the victim's pants, blouse, and panties and placed the items, along with the rape kit, in a locked safe in the hospital. The petitioner asserts that when a detective picked the items up at the hospital, the panties were missing. The petitioner contends counsel should have sought to suppress the victim's clothes because of a break in the chain of custody. The petitioner asserts the failure to have the clothes suppressed allowed the state to argue there was a link between fibers found on the petitioner's and victim's shirts.

The state contends that the petitioner has failed to prove that counsel was ineffective or that the petitioner was prejudiced, given the overwhelming evidence presented at the trial. The state asserts that on direct appeal, this court concluded that counsel thoroughly cross-examined the state's witness about the physical evidence and that the petitioner was not prejudiced by the admission of the evidence.

The trial court found that the petitioner did not receive the ineffective assistance of counsel and was not prejudiced. It stated

> The Court of Criminal Appeals determined that counsel thoroughly cross-examined the state's witness who testified as to the fiber evidence, concluding that the petitioner suffered no prejudice from its admission. Seeing as how the evidence against the petitioner was quite extensive, it appears as though [counsel] did the best job that he could with a case that was extremely difficult.

On direct appeal, the petitioner argued that it was error for the trial court to deny his motion requesting that the prosecution be prohibited from introducing fiber evidence for failing to disclose the information through discovery. This court stated, "Given defense counsel's thorough cross-examination of Littlejohn, [a TBI expert on fiber analysis], it is apparent that [the petitioner] suffered no prejudice from the evidence's late disclosure and admission." See Thurmond, slip op. at 8.

The facts from the direct appeal show that the victim identified the petitioner as the man who attacked her. Ms. Rivera, who chased the petitioner from the motel room, also identified the petitioner as the attacker. Ms. Rivera gave the license plate number, 099 JKF, and a description of the attacker's car to the police. The description of the car matched the petitioner's car, and the license plate number was one letter different from the petitioner's license plate number, 099 JKB. The evidence identifying the petitioner is substantial. We conclude the petitioner has failed to show

that a reasonable probability exists that the result of his trial would have been different had the fiber evidence been excluded.

### III.  FAILURE TO OBJECT TO HEARSAY

The petitioner contends he received the ineffective assistance of counsel because counsel failed to object to Detective Baxter's testimony that the victim identified the petitioner in a photograph lineup.  The petitioner asserts that because the victim did not speak English and Detective Baxter did not speak Spanish that Detective Baxter had a witness, Ms. Rivera, act as an interpreter during the photograph lineup.  He asserts the identification made by Ms. Rivera to Detective Baxter was hearsay because it was not given by the victim.  The petitioner contends if the attorney had objected, the jury would not have heard evidence that the victim identified the petitioner in a photograph lineup.

The state contends the petitioner failed to prove that his attorney was ineffective or that he was prejudiced.  The state asserts that three other witnesses identified the petitioner before the trial and that the eye witness identification evidence was substantial.  The trial court found the petitioner failed to prove he was prejudiced by his attorney's failure to object to hearsay.  It stated

> [t]he victim, along with two other co-workers, identified the petitioner as the perpetrator of the offenses, both in and out of court. An employee from another nearby motel also testified as to having seen the petitioner roaming the halls of her place of employment. Furthermore, the aforementioned license plate information alone provided the prosecution with quite inculpatory evidence. Considering the wealth of evidence in existence against the petitioner, it does not appear as though any inaction on behalf of counsel with regard to objections to this testimony would have prejudiced the petitioner in this matter.

We conclude the record does not preponderate against the trial court's findings, and the petitioner is not entitled to relief on this issue.

### IV.  FAILURE TO CALL ALIBI WITNESS

The petitioner contends he received the ineffective assistance of counsel because his counsel failed to call an alibi witness, Ms. Grayson.  The petitioner asserts it was not a strategic decision made by counsel.  The petitioner asserts counsel provided no specific knowledge or recollection regarding how Ms. Grayson's statement was inconsistent with the petitioner's statement.  The petitioner contends counsel deemed himself to be ineffective when he stated in his motion for a new trial that he was ineffective for failing "to call [petitioner's] alibi witness who would have established he was working at the time the offenses herein were committed."  The petitioner asserts failing to provide the jury with the whereabouts of the petitioner at the time of the crime was

"tantamount to providing no adversarial testing process to the assertions of the State." He contends counsel provided no adequate reason for failure to use the petitioner's alibi defense.

The state contends the petitioner failed to show that counsel's decision not to call Ms. Grayson was ineffective or that he suffered any prejudice. The state contends the evidence did not demonstrate that Ms. Grayson could have provided a valid alibi. The state asserts that Ms. Grayson's description of events the day of the crime left time in which the petitioner could have committed the offense. The state asserts counsel found Ms. Grayson's account of events to be in conflict with the petitioner's account, which caused counsel to have professional and ethical reservations about presenting Ms. Grayson's testimony.

The trial court found

> [Counsel] testified at the evidentiary hearing that petitioner's story and that of Ms. Grayson did not coincide to form a believable alibi defense. He opined that there were too many inconsistencies in their recollections of the timing of the events that took place, thus allowing for the possibility to place the petitioner at the scene of the crime during the time of its commission. [Counsel] also stated that an alibi defense is rarely successful and that admitting testimony by the petitioner and Ms. Grayson would have created serious credibility issues. The Court tends to agree with [counsel] on this belief.

Counsel testified that Ms. Grayson's statements were in conflict with the facts of the case and the petitioner's statements. He said Ms. Grayson's testimony that the petitioner worked with her at a video store was inconsistent with the petitioner's statement to police that he worked at Perry's Market. He said that he did not believe Ms. Grayson was credible and that he did not feel he could ethically call her as a witness. We conclude the record does not preponderate against the trial court's finding that counsel's failure to use Ms. Grayson as a witness was not deficient performance.

## V. DECISION NOT TO TESTIFY

The petitioner contends that he received the ineffective assistance of counsel because his trial counsel prevented the petitioner from testifying at the trial. He asserts counsel advised him not to testify because of a prior rape conviction and failed to file a motion in limine. He contends that based on the attorney's belief that the rape conviction would come in, he chose not to testify. The state contends the petitioner acknowledged that he made the final decision not to testify and that the attorney had concerns about his prior rape conviction becoming a factor. The state asserts the attorney had concerns about the petitioner's credibility and was not ineffective for advising him not to testify. The state asserts the petitioner failed to show he was prejudiced by his decision not to testify. The trial court found that the "decision to have the petitioner refrain from testifying at trial seems prudent considering the circumstances." The trial court said the attorney "was not ineffective for preventing the petitioner from testifying."

At the post-conviction hearing, the attorney testified that "we talked about his extensive criminal record, the facts, and I told him it would be his decision but I made a recommendation I didn't feel like he should testify, but that was his decision to make." He said he advised the petitioner not to testify because he did not believe the petitioner was credible or would do well on cross-examination with his inconsistent statements. The petitioner testified that he had one prior rape conviction and that he decided not to testify based on his attorney's advice. We believe that the record reflects that although counsel advised the petitioner not to testify, counsel did not "prevent" the petitioner from testifying. We conclude that the petitioner failed to prove by clear and convincing evidence that counsel's advice for the petitioner not to testify was improper, and the petitioner is not entitled to relief on this issue.

## CONCLUSION

We conclude that the petitioner has failed to show that he received the ineffective assistance of counsel. We affirm the judgment of the trial court.


_____
JOSEPH M. TIPTON, JUDGE